IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00031-REB-BNB

LOUIS BUENABENTA, JR.,

Plaintiff,

v.

CORRECTIONS OFFICER STEVEN BARGER, individually,
CORRECTIONS OFFICER JENNIFER SCAVARDA, individually,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Motion to Enforce Settlement Agreement From Defendants Barger and Scavarda** (the "Motion to Enforce Settlement"), filed October 12, 2005. I held a hearing and received evidence concerning the motion on November 17, 2005. Based upon the evidence received at the hearing, I respectfully RECOMMEND that the Motion to Enforce Settlement be GRANTED.

The plaintiff is an inmate in the custody of the Colorado Department of Corrections. Throughout this action he has been represented by counsel, although at one point that counsel sought leave to withdraw.

In his Amended Complaint the plaintiff alleges claims for use of excessive force against each of the defendants. The Amended Complaint also includes claims for deliberate indifference to serious medical needs against Rudolph Wencl and Neal Lousberg, but the deliberate indifference claims were voluntarily dismissed with prejudice by an order dated July 15, 2005.

On August 29, 2005, the plaintiff's lawyer moved to withdraw on the following grounds:

> Based upon [the plaintiff's] deposition testimony, undersigned counsel believes that the allegations contained in the complaint continue to have evidentiary support, as required by Fed. R. Civ. P. 11(b)(1). However, in light of the conflict between [the plaintiff's] testimony, and that of the correctional-officer defendants, and in the absence of additional evidentiary support from the videotape or other sources, undersigned counsel has serious concerns about the outcome of this case at trial.
>
> In an effort to settle this case without a trial, undersigned counsel has broached the subject of settlement with both defense counsel and Mr. Buenabenta. However, there is a huge disparity between defense counsel's assessment of the value of this case, if any, and that of Mr. Buenabenta. Therefore, the likelihood of a settlement in this case appears to be extremely remote.

Counsel's Motion to Withdraw Pursuant to Local Rule 83.3, filed August 29, 2005, at ¶¶5-6.

I denied the motion to withdraw in an order dated August 31, 2005, finding that neither the uncertainties of trial nor the plaintiff's unwillingness to settle constituted good cause justifying a lawyer's withdrawal from a case. The next day, plaintiff's counsel moved for reconsideration of my order denying his request to withdraw, and I set the motion for reconsideration for hearing on September 19, 2005.

The plaintiff attended by telephone the hearing on September 19, 2005. At the start of that hearing, I was informed that the motion for reconsideration was no longer at issue because the parties had resolved the case. The following colloquy occurred:

> MR. VIORST [plaintiff's counsel]: Your Honor, I apologize for not notifying you sooner, but we actually--immediately prior to Your Honor entering the courtroom, I was able to speak with Mr. Buenabenta [the plaintiff] for a few moments sort of privately, only the Court was present, Mr. Lyons was not, but, we actually have resolved this matter.

THE COURT: Oh, well. I'm sorry I didn't give you a chance to say that.

* * *

So, Mr. Buenabenta, are you aware of this business about the case being resolved?

MR. BUENABENTA: Yes, sir.

THE COURT: And do you agree that the case has been resolved?

MR. BUENABENTA: Yes, I would--I would agree.

THE COURT: Well, why don't we--any objection to putting it on the record, Mr. Viorst?

MR. VIORST: No, Your Honor.

THE COURT: All right. . . . Mr. Viorst, do you want to state the settlement for the record?

MR. VIORST: Judge, it's my understanding that the defendants are going to pay to my law firm, which I will then disperse [sic] the appropriate sum to Mr. Buenabenta, the quantity of $1500.

And I think there's some technical aspects of this money being paid through the government that I'm not totally familiar with, and I'll allow Mr. Lyons t address that, but . . .

So that's the bottom line, and Mr. Buenabenta and I, I believe, understand as far as the amount of money to be paid.

THE COURT: Okay. Mr. Lyons [defendants' counsel], any other terms to the settlement?

MR. LYONS: Yes, Your Honor. One is that Mr. Viorst and Mr. Buenabenta submit to the court a joint stipulated motion to dismiss with prejudice and a proposed order to that effect. . . .

We'll need a settlement agreement that's executed by Mr. Buenabenta to the effect that there are no admissions of any kind associated with the fact that this matter has been resolved. The dollar amount involved is, in fact, $1500. I don't yet know, Your Honor, specifically how they're going to have to handle the

payment of the money because Mr. Buenabenta remains incarcerated and his circumstances do not permit him to have money, and being able to have it credited to his canteen account, or whatever other arrangements have to be made, is something Mr. Viorst and I have already discussed to some extent and will have to work out.

\* \* \*

THE COURT: All right. So as I understand it, the terms are that the defendants will pay to the plaintiff the sum of $1500, subject to some technicalities about how that gets paid and credited, et cetera. There will be a written settlement agreement which at least contains a statement that the defendants do not admit any liability, but are merely settling the case, and there will be a stipulation to dismiss the case with prejudice as against the defendants.

\* \* \*

Okay. Mr. Buenabenta, do you--have you heard those terms?

MR. BUENABENTA: Yes, I have.

THE COURT: Do you understand them?

MR. BUENABENTA: Yes.

THE COURT: Are they acceptable to you?

MR. BUENABENTA: Yes sir.

\* \* \*

THE COURT: All right. I'll enter an order that the case be dismissed within 30 days of today's date.

Mr. Viorst, anything else?

MR. VIORST: No, Your Honor. I appreciate your hearing the case, and I appreciate being able to have Mr. Buenabenta present as well. If I could just let Mr. Buenabenta know that I'll be in touch with him about this as well.

THE COURT: Okay. Thank you.

Anything else, Mr. Lyons?

MR. LYONS: No, Your Honor. Thank you very much.

>THE COURT: Mr. Buenabenta, anything else you need to talk about?
>
>MR. BUENABENTA: No, sir.
>
>THE COURT: All right. Thank you all very much.

Transcript of Proceedings, September 19, 2005 (hereafter "Trans."), at p.4 line 18 through p.9 line 9.[1]

In two letters filed with the Clerk of the Court subsequent to the September 19 hearing, Mr. Buenabenta has not challenged the fact that he agreed to a settlement of the case. He argues instead that his agreement to settle was coerced by his lawyer. Specifically, Mr. Buenabenta claims:

> I agreed to settle only because I was placed in a corner by my attorney, Mr. Viorst. You see your honor, Mr. Viorst did not want to put anymore of his own money into this case as to see it go to trial. On the day we had the [deposition] hearings Mr. Viorst gave me an ultimatum after the [deposition] hearing telling me that I either settled the case or he would withdraw as my attorney in this matter as well as the criminal matter that Mr. Viorst had already been paid in full for by my brother. . . .
>
> Mr. Viorst even went as far as to send me a letter telling me that he was withdrawing and sent me a rough draft motion for a Crim. P. rule 35(c) motion and titled it pro se and said good luck in both matters. I didn't know what to do? So I received the order from your court stating that a hearing was to be scheduled on September 19th, 2005, because you had denied his motion to withdraw from this case. Well, I spoke to Mr. Viorst prior to the hearing on the telephone and again he gave me an ultimatum to settle this case for the $1,500 because you would grant him his motion to withdraw and that he would not handle my 35(c) either. I didn't want my brother to lose that money that he had paid Mr. Viorst to do the 35(c) for me. So I was not given much of a choice, so I went ahead

---

[1] The transcript was admitted into evidence as Exhibit A at the hearing on the Motion to Enforce Settlement.

> and told Mr. Viorst that I would go ahead and settle the case for that amount of money.
>
> But now your Honor, I would like to withdraw that agreement that I made if that is possible. I feel that I made a bad choice and was pressured into that position.

Letter, dated September 27, 2005 (filed October 3, 2005), at pp.1-2.[2]

In a subsequent letter dated October 1, 2005, the plaintiff reaffirmed that he wants "to withdraw this settlement agreement . . . because my attorney Anthony Viorst forced me into this settlement. . . ." Letter, dated October 16, 2005 (filed October 18, 2005), at p.1.[3]

At the evidentiary hearing on the Motion to Enforce Settlement, Mr. Buenabenta made clear that the coercion which he claims caused him to agree to the settlement on September 19, 2005, is limited to the alleged threats by Mr. Viorst to withdraw from his representation in this case and in Mr. Buenabenta's Colo. R. Crim. P. 35(c) proceeding in the Colorado state courts if Mr. Buenabenta did not accept the $1,500 settlement offered here.

No evidence of the contents of the alleged threats to withdraw by Mr. Viorst, other than Mr. Bueanbenta's testimony, was received at the hearing on the Motion to Enforce Settlement. Although Mr. Bueanbenta claimed to have letters containing the threats, those letters were not provided to the court or to opposing counsel prior to the hearing as required by my minute order of October 14, 2005 (requiring the parties to submit "witness lists, exhibit lists, original and two copies of all exhibits, and hearing briefs" on or before November 10, 2005), and so were not

---

[2]The September 27 Letter was admitted into evidence as Exhibit C at the hearing on the Motion to Enforce Settlement

[3]The October 16 Letter was admitted into evidence as Exhibit D at the hearing on the Motion to Enforce Settlement

6

offered or admitted into evidence at the hearing. Mr. Viorst testified that he did not threaten to withdraw from his representation in the Rule 35(c) proceeding, and Mr. Buenabenta admitted that Mr. Viorst has in fact pursued the Rule 35(c) matter as required.

A trial court has the power, while a case is pending before it, summarily to enforce the settlement of the parties. United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993). Settlement agreements are favored by the courts. City & County of Denver v. Adolph Coors Co., 813 F. Supp. 1476, 1479 (D. Colo. 1993). The court must apply state contract law to issues involving the formation, construction, and enforcement of a settlement agreement. United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000). Where, as here, there are disputed issues of material fact concerning the enforceability of the contract, the court must hold an evidentiary hearing to resolve the disputed facts. Hardage, 982 F.2d at 1496.

A settlement agreement does not have to be in writing to be enforced. Citywide Bank of Denver v. Herman, 978 F. Supp. 966, 977 (D. Colo. 1997)(applying Colorado law); DiFrancesco v. Particle Interconnect Corp., 39 P.3d 1243, 1248 (Colo. App. 2001).

Under Colorado law, "[a] contract is voidable on the grounds of duress if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative." Vail/Arrowhead, Inc. v. District Court, 954 P.2d 608, 612 (Colo. 1998). A threat is improper and may form the basis for the defense of duress where it is "'so shocking that the court will not inquire into the fairness of the resulting exchange,' or a threat 'in which the impropriety consists of the threat in combination with resulting unfairness.'" Id. at 613 (quoting *Restatement (Second) of Contracts* § 176 comment a (1981)). An improper threat does not constitute duress, however, if the alleged victim "fails to pursue a reasonable alternative but instead yields to the threat." Id.

7

(citing *Restatement (Second) of Contracts* § 175 comment b (1981)).  In addition, "threats to do what one may lawfully do are not duress."  Bennett v. Coors Brewing Co., 189 F.3d 1221, 1231 (10th Cir. 1999)(quoting Heald v. Crump, 215 P. 140, 141 (Colo. 1923)).  So, for example,

> [T]he threat of commencing a civil action to enforce a monetary claim . . . does not generally constitute duress because the victim's ability to assert his or her rights in the threatened action is a reasonable alternative to succumbing to the threat and then later filing suit.

Vail/Arrowhead, Inc., 954 P.2d at 613.

Finally, in order to establish duress under Colorado law, "a party must show an unlawful threat or other improper means, so that the other party's will was so taken away that he could not properly enter into the contract." Bennett, 189 F.3d at 1231.  To meet this burden, the party claiming duress must make the following showing:

> To establish duress as grounds for the avoidance of a contract, conveyance, or other act, it is not alone sufficient to show the exertion of pressure by threats or even by physical compulsion, but it must also clearly appear that the force or threats employed actually subjugated the mind and will of the person against whom they were directed, and were thus the sole and efficient cause of the action which he took. . . .  And it is a general rule that a transaction cannot be held to have been induced by duress, notwithstanding any threats which may have been made, where the party had and took an opportunity for reflection and for making up his mind, and where he consulted with others and had the benefit of their advice, especially where he was advised by his counsel.

Wiesen v. Short, 604 P.2d 1191, 1192 (Colo. App. 1979)(internal quotations and citations omitted); see Bennet, 189 F.3d at 1231 (quoting Wiesen with approval).

Based on the evidence introduced at the hearing on November 17, 2005, I find the following facts to have been established:

8

1. Mr. Viorst moved to withdraw from his representation in this case on August 29, 2005. The motion to withdraw was denied by my order dated August 31, 2005. The plaintiff was aware of Mr. Viorst's motion to withdraw and was aware that it had been denied.

2. Mr. Viorst filed a motion to reconsider my order denying his motion to withdraw on September 1, 2005. The motion to reconsider was set for hearing on September 19, 2005. The plaintiff was aware that the purpose of the hearing on September 19, 2005, was to deal with Mr. Viorst's request that I reconsider his motion to withdraw as the plaintiff's counsel in this case.

3. The plaintiff attended the September 19, 2005, hearing by telephone. At the beginning of that hearing, I was informed that the parties had reached a settlement of the case. Exhibit A introduced at the hearing on the Motion to Enforce Settlement is a copy of the hearing transcript from September 19, 2005. As the transcript reflects, the plaintiff heard the terms of the proposed settlement; understood those terms; and agreed to them. At the end of the hearing on September 19, 2005, when asked if there was anything else the plaintiff wished to discuss, he responded: "No, sir." There was no impediment to the plaintiff raising at the time of the September 19 hearing the issue of the alleged coercion or duress which he now claims caused him to agree to the settlement.

4. The terms of the settlement reached by the parties are as set forth at the hearing on September 19, 2005, and are reflected in the transcript at pp.5-8.

Applying these facts to the law applicable to the plaintiff's claim of duress to invalidate the settlement agreement, I find that the plaintiff has failed to establish that the settlement agreement entered into on September 19, 2005, and put on the record on that day was obtained through

9

coercion or duress. First, Mr. Viorst had a lawful right to seek leave to withdraw. Threatening to do what one may lawfully do does not constitute duress. Bennett, 189 F.3d at 1231.

Second, the plaintiff failed to pursue a reasonable alternative to succumbing to the alleged threat. Specifically, the plaintiff was at a hearing dealing with the issue of whether Mr. Viorst would be allowed to withdraw as his lawyer. Rather than merely succumbing to Mr. Viorst's alleged threat that he would withdraw, the plaintiff had the opportunity at the September 19 hearing to bring the alleged threat to my attention and to have the matter of Mr. Viorst's right to withdraw addressed. The plaintiff knew that Mr. Viorst had not been allowed to withdraw previously and knew that Mr. Viorst could not withdraw from this case without my approval. In addition, leave of court also is required for Mr. Viorst to withdraw from his representation of the plaintiff in the state court Rule 35(c) proceeding. See Colo. R. Crim. P. 44(d). Consequently, Mr. Viorst's threat to withdraw, even if made, does not constitute duress because the plaintiff had the ability to resist Mr. Viorst's motions to withdraw, and the plaintiff acted unreasonably in succumbing to the alleged threat instead. See Vail/Arrowhead, 954 P.2d at 613.

Finally, I find that the plaintiff has failed to establish that the pressure of Mr. Viorst's alleged threat to withdraw in this and in the Rule 35(c) state court proceeding was not sufficient to and did not actually subjugate the plaintiff's mind and will, and was not the sole and sufficient cause of the plaintiff's decision to accept the $1,500 settlement. Moreover, the plaintiff had the opportunity for reflection before making up his mind, and certainly before stating on the record that he had heard, understood, and accepted the proposed settlement.

I respectfully RECOMMEND that the Motion to Enforce Settlement be GRANTED; that the defendants be ordered to submit the settlement payment in the amount of $1,500.00 to the office of Anthony Viorst, to be disbursed between himself and the plaintiff as appropriate; that Mr. Viorst be ordered to notify the court within 2 business days of the receipt of the settlement proceeds; and that upon notification from Mr. Viorst of the receipt of the $1,500.00 payment, that the action be dismissed with prejudice.[4]

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 21, 2005.

BY THE COURT:

/s/ Boyd N. Boland
United States Magistrate Judge

---

[4] I am aware of the additional condition that the plaintiff execute a a settlement agreement reciting that the defendants do not admit liability. The record now is replete with that assertion, and the requirement of a settlement agreement from the plaintiff containing that term is unnecessary and redundant.